UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NUMBER 5:25-cv-63-LLK

SARA D.[1] PLAINTIFF

v.

FRANK BISIGNANO,
Commissioner of Social Security DEFENDANT

# MEMORANDUM OPINION AND ORDER

Plaintiff filed a Complaint seeking judicial review pursuant to 42 U.S.C. § 405(b), of the Final Decision of the Commissioner denying her claims for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. [DN 1].[2] Plaintiff's Fact and Law Summary is at DN 12, the Commissioner's Fact and Law Summary at DN 14, and Plaintiff's Reply Brief at DN 15. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge to determine this case, with any subsequent appeal to be filed directly to the United States Court of Appeals for the Sixth Circuit. [DN 11]. The matter is now ripe for adjudication.

After examining the administrative record, the Administrative Law Judge's (ALJ's) Decision, the arguments of the parties, and the applicable authorities, the Court finds that Plaintiff's two arguments are unpersuasive, that the ALJ's Decision is supported by substantial evidence, and that his findings comport with applicable law. Accordingly, the Court will AFFIRM the Commissioner's Final Decision and DISMISS Plaintiff's Complaint.

---

[1] Pursuant to General Order 22-05, Plaintiff's name in this Report and Recommendation is shortened to first name and last initial.
[2] References to specific pages in the Court's Docket in this Memorandum Opinion will include the Docket Number and page number found in the red inked header at the top of the document.

## I. BACKGROUND

**Administrative History**. Plaintiff filed applications for DIB and SSI on September 14, 2022, alleging disability from September 6, 2022, at age 31 as a result of aphasia and atypical migraines. [DN 9] at 228. Her claims were denied initially and upon reconsideration. Plaintiff requested a hearing before an ALJ which was granted. The telephonic hearing was conducted on February 8, 2024, before ALJ Dennis Hansen and with non-attorney representative Polly Hernandez attending on Plaintiff's behalf. Hearing Transcript, [DN 9] at 42. Also attending and testifying during the hearing was impartial vocational expert, Linda Jones. [DN 13] at 20. On April 12, 2024, the ALJ issued an unfavorable Decision finding that Plaintiff was not disabled within the meaning of the Act. [DN 9] at 16-36.

Plaintiff requested review of the ALJ's Decision by the Appeals Council; on March 20, 2025, the Appeals Council denied Plaintiff's request. [DN 9] at 5. At that point, the ALJ's Decision became the Final Decision of the Commissioner. 42 U.S.C. § 405(g); 20 C.F.R. § 422.210(a). This Court will be reviewing the ALJ's Decision and the evidence that was contained within the administrative record at the time the ALJ rendered his unfavorable Decision. 42 U.S.C. § 405(g).

**The ALJ's Decision**. The denial of Plaintiff's claims for DIB and SSI was based upon the five-step sequential evaluation process applicable in all Social Security disability cases. At Step One, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2024, and that she has not engaged in substantial gainful activity since September 6, 2022, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

At Step Two, the ALJ found that Plaintiff has the following severe impairments: obesity, migraines versus neuralgia, tachycardia, postural tachycardia syndrome (POTS), and Ehlers Danlos syndrome (20 CFR 404.1520(c) and 416.920(c)).

At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

As in any case that proceeds beyond Step Three, the ALJ must determine a claimant's residual functional capacity (RFC), which is defined as "the most you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a), 404.1546(c), 416.945(a), 416.946(c). In making an RFC determination, the ALJ considers the record in its entirety including medical source statements, prior administrative medical findings, and all other evidence in the case record. 20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c), 416.929, 416.945(a)(3), 416.946(c). The ALJ found that, notwithstanding her impairments, Plaintiff retains the RFC to perform light work with certain limitations:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally climb ramps and stairs. She can occasionally be exposed to extreme heat, extreme cold, very bright sunlight, and very loud noise. She can frequently handle. She can never climb ladders, ropes or scaffolds. She can never be exposed to unprotected heights or dangerous moving machinery, and can never operate a motor vehicle at work.

ALJ's Decision, [DN 9] at 25-26.

At Step Four, the ALJ found that Plaintiff is capable of performing past relevant work as an accounts payable clerk and a customer service representative. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965). Accordingly, the ALJ found that Plaintiff was not under a disability, as defined in the Social Security Act, from September 6, 2022, through the date of the decision (20 CFR 404.1520(f) and 416.920(f)).

## II. STANDARD OF REVIEW

The task in reviewing the ALJ's findings is limited to determining whether they are supported by substantial evidence and made pursuant to proper legal standards. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *McGlothin v. Comm'r of Soc. Sec.*, 299 F.App'x 516, 522 (6th Cir. 2008). The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). In reviewing the record as a whole, the Court may not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 296 (6th Cir. 1994).

The substantial evidence standard presupposes that there is a "zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). A reviewing court decides only whether substantial evidence supports the decision. *Id*. If it does, the court affirms the decision even in the face of substantial evidence supporting the opposite conclusion. *Id*. As described by the Supreme Court, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial

evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

**Arguments of the Parties**. Plaintiff's sole argument in this case is that "[t]he ALJ erred in finding Plaintiff's well-documented migraine headaches caused no off-task work-related limitations, resulting in an RFC finding that does not account for the 'total limiting effects' of all her impairments and limitations." [DN 12] at 1. Specifically, Plaintiff contends that the "ALJ's RFC that omits any off-task limitation is patently contrary to the record that certainly demonstrates at least some off-task limitations." [DN 12] at 9. She argues that the ALJ selectively decided or "cherry picked" which limitations to credit and which to reject in the evidence and in so doing, "failed to account for the most obvious impact of Plaintiff's continuing headaches—that she must absent herself from activities during the peak period of the headache, causing her to be 'off-task' during these episodes." [DN 12] at 8-9. Plaintiff contends that an RFC that does not contemplate her ever having headaches that limit her ability to perform full-time work is a "patently unreasonable finding." [DN 12] at 9.

In Response, the Commissioner argues that the ALJ's RFC rightly excludes any off-task limitation or other restrictions to accommodate Plaintiff's migraines because the evidence failed to show such limitations were warranted. [DN 14] at 4. The Commissioner then reviews the evidence upon which the ALJ based his conclusion that Plaintiff's testimony of four to six migraines per week lasting two to three days was not supported by the record and was not consistent with her reports to treating sources that her migraines had improved. [DN 14] at 4. The Commissioner notes that the ALJ credited her testimony to some degree as her sensitivity to light and noise resulted in light and noise restrictions in the RFC. *Id*. The Commissioner posits that

Plaintiff's argument impermissibly asks this Court to reweigh the evidence where the Plaintiff failed to show that an off-task limitation (or any additional limitation) was warranted. *Id*. Finally, the Commissioner indicates that it was not error for the ALJ to find Plaintiff's report of daily incapacitating migraines inconsistent with homeschooling her eight-year-old son who has autism, providing care for her three-year-old toddler when not in daycare, and seeing family on a weekly basis. [DN 14] at 6.

In Reply, Plaintiff reasserts her position that evidence of variable control of her migraine symptoms does not discredit her testimony that she has 4-6 migraines weekly noting that reference to the twenty-five-page December 1, 2023, medical record requires reading certain notations in context. For example, the "well controlled" notation must be read in context with the additional statement that her headaches "are aborted by Imitrex," described earlier as only a "mild benefit." [DN 15] at 2. She posits that "the fact that her headaches are 'aborted' with Imitrex does not prove they do not occur, but only that this medication eventually eradicates a headache that had already started." *Id*. Plaintiff takes issue with the ALJ's finding that her headaches are "well controlled" to mean that she no longer suffers any effects of them. *Id*. She continues to claim that the ALJ erred: 1) by ignoring the fact that Plaintiff continues to have headaches that cause her to be off task for significant periods of time; 2) the evidence emphasized by SSA in the December 2023 office note does not suggest that Plaintiff's only triggers for headaches are light and noise; and 3) the ALJ's reasoning is flawed because the ALJ concedes and accommodates the fact that Plaintiff's headaches limit her ability to tolerate light and noise, yet fails to include in the RFC any off-task time associated with her peak periods of migraines. [DN 15] at 3-4.

## III. DISCUSSION

**Plaintiff's Hearing Testimony**. At her February 8, 2024, hearing before ALJ Hansen, Plaintiff testified to problems with migraine headaches for which she takes multiple medications, including a monthly injection of Emgality. [DN 9] at 49. She indicated that the medications help to some degree, but that she still has several headaches per week. *Id*. Plaintiff also takes medication for trigeminal neuralgia, but it does not help. She experiences palpitations and irregular heartbeat which is treated with a beta blocker. [DN 9] at 50-51. Plaintiff testified to experiencing aphasia or speech stuttering related to her migraines about half the time following a sudden migraine. [DN 9] at 51. Plaintiff also has Ehlers-Danlos syndrome which causes joint pain and subluxation, mostly in her wrist, hips, knees, shoulders, and neck. [DN 9] at 52. She estimated her ability to stand to be about five minutes due to heart rate spike causing dizziness, lightheadedness, and confusion, and an ability to lift about eight to ten pounds. *Id*.

Plaintiff's daily home activities include routine household tasks of preparing food, washing dishes, and folding laundry. *Id*. She homeschools her son, with daily help from her mother, sister, and niece. [DN 9] at 53. Plaintiff estimated that she suffers from four to six migraines per week, which last from several hours to two or three days; when she has a migraine, she retreats to a completely dark and silent room, wears a migraine cap, and takes breakthrough medications. [DN 9] at 54. When Plaintiff has a migraine, she is very sensitive to light and noise, and experiences nausea and speech problems. *Id*. She has sought treatment in the ER for migraine headaches, but generally must hide in her room until it goes away. [DN 9] at 55. Plaintiff estimates she can sit in an office chair about ten minutes, and has a lot of pain and difficulty using her hands and fingers to dress, use a computer, grip, pull and twist. [DN 9] at 56-7.

**Residual Functional Capacity**. In assessing an individual's RFC, the ALJ must consider the claimant's subjective allegations alongside medical records and physician opinions. 20 C.F.R. §§ 404.1529, 416.929, SSR 16-3p. A claimant's statement that she is experiencing pain or other symptoms will not, taken alone, establish that she is disabled; there must be medical signs and laboratory findings that show the existence of a medical impairment that could reasonably be expected to give rise to the pain or other symptoms alleged. *Id*. §§ 404.1529(a), 416.929(a). RFC is the ALJ's ultimate determination of what a claimant can still do despite their limitations, and the ALJ is charged with determining a claimant's RFC "[b]ased on all the relevant evidence in [her] case record." 20 C.F.R. §§ 404.1545(a); 416.945(a). Thus, in making the RFC determination, the ALJ must necessarily evaluate the persuasiveness of the medical source statements and prior administrative findings in the record as well as assess the claimant's subjective allegations. 20 CFR §§ 404.1520c, 404.1529(a), 416.1520c, 416.1529(a). To support his RFC findings, the ALJ properly relied upon objective medical and other evidence in the record. The Decision indicates that the ALJ's RFC was prepared "[a]fter careful consideration of the entire record," and the Court notes that the RFC and symptom analysis constitutes some eight pages of the seventeen-page Decision. [DN 9] at 26-33.

The ALJ thoroughly reviewed the medical treatment chronology beginning with a September 7, 2022, ER visit for migraine, subsequent referral and treatment with neurology and cardiology specialists, referral to Vanderbilt for genetic testing, routine care with her primary care provider, and new patient visits with a cardiac electrophysiologist and physiatrist. [DN 9] at 26-29. Consistent with the regulatory requirements, the ALJ discussed both the objective medical evidence and Plaintiff's subjective allegations regarding her alleged impairments and associated limitations. See 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (requiring same). The record reflects

treatment for migraine headaches, facial and joint pain, dizziness upon standing with diagnostic testing, trial-and-error medication adjustments, and numerous references to reports of symptom improvements and migraine headaches decreasing in frequency and severity over time.

The ALJ thoroughly and fairly considered examinations conducted by several medical professionals, including over a year's treatment records with Mercy Neurology for migraine headaches and trigeminal neuralgia. The ALJ notes that in September of 2022, Plaintiff began treatment with Mercy Neurology, complaining of one to two headache days per week, with headaches lasting for hours to days and which included photophobia and phonophobia and occasionally caused stuttering speech. [DN 9] at 26. He notes that cardiology treatment was established to address dizziness and near fainting upon standing, and propranolol was prescribed which resulted in Plaintiff feeling much better and it was noted that her migraines were improved. *Id*. Neurology follow-up showed a normal EEG, but in January of 2023 Plaintiff was seen in the ER for "blacking out" while cleaning the litter box, after which she was unable to speak. [DN 9] at 27. He relates that she denied headaches for the last few days, that her stutter was worse because of her fear of needles, an MRI of her brain and CT of her head were unremarkable, and that she had a normal ECG. *Id*. The ALJ determined that the records did not support the degree of impairment to preclude light work, as they show that Plaintiff's impairments are attenuated with medication.

The ALJ's Decision includes a detailed discussion of the Plaintiff's impairments, the medical and other evidence of record, and the ALJ's reasoning for either accepting or rejecting same. Noting that no treating source had assigned any work-related limitations, the ALJ nonetheless rejected state agency medical assessments finding that Plaintiff could perform medium exertional work but with additional limitations of no climbing of ladders, ropes, or scaffolds and

no exposure to hazards such as machinery and heights. [DN 9] at 32-33. Giving Plaintiff some benefit of the doubt, the ALJ assigned greater limitations than those of the state agency consultants: light instead of medium work, inclusion of environmental limitations, limitation to frequent handling. [DN 9] at 32-33. The ALJ carefully reviewed the third-party function reports of Plaintiff's husband and mother, but nonetheless concluded that "the evidence contained in the record did not support Plaintiff's allegations of incapacitating symptoms." [DN 9] at 33. The Court finds no error in the ALJ's assessment of the limitations contained in the RFC.

**The ALJ properly characterized and evaluated the evidence**. A two-step process governs assessment of the limiting effects of a claimant's subjective symptoms. First, the ALJ determines whether an underlying medically determinable impairment exists that could reasonably be expected to produce the claimant's symptoms. *See* SSR 16-3p; *Rogers v. Comm'r of Soc. Sec*., 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929(a)). If the first step is met, the ALJ then evaluates the intensity and persistence of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform work-related activities. *See* SSR 16-3p; *Rogers*, 486 F.3d at 247. In doing so, the ALJ evaluates the entire case record, including the objective medical evidence, the claimant's statements about her symptoms, statements and information provided by medical sources and other persons, and any other relevant evidence in the individual's case record. *Id*. The ALJ also considers other factors relevant to the claimant's symptoms, such as daily activities, frequency of pain, and measures used to relieve pain. 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3).

Both Plaintiff and the Commissioner cite to the December 1, 2023, neurology record as supportive of their positions. [DN 9] at 987-1019. Plaintiff argues that nothing has discredited her testimony that she has 4-6 migraines weekly and that the ALJ's selective treatment of the record,

taking things out of context, and "cherry-picking" all violate his solemn obligation to fairly consider the evidence both for and against granting benefits. [DN 15] at 3. She notes that the same record reports Imitrex provides only "mild benefit." In contrast, the Commissioner points to the December 2023 record which states that "[f]rom a migraine standpoint she is doing well" [DN 9] at 995, and that the Plaintiff is seeking "to have this Court reweigh the evidence and reach a different conclusion, which is not permitted." [DN 14] at 4.

The Court has reviewed the neurology records in chronological order and finds that the ALJ's consideration of these records was both thorough and fair. Notably, the March, June, September, and December 2023, neurology records carry over substantial "cut and paste" history and impression portions from visit to visit. For example, the treating source's records for each of these four visits includes the same sentence, "Headaches are aborted by Imitrex." [DN 9] at 1269, 1237, 1121, 995. It is in the portions of the neurology records history and impression descriptions that are *not* cut-and-paste carry over that the provider appears to include some new analysis of Plaintiff's migraine and neuralgia conditions. The December 2023 record's new observations include that she is doing well from a migraine standpoint, and that the migraines are well-controlled at present. [DN 9] at 995, 1001. There are internal inconsistencies within each of these records, given the carry-over of verbiage from previous records.[3] However, it appears that the ALJ was able to fairly trace the Plaintiff's migraine and neuralgia condition progression despite the less-than-clear neurology record keeping.

This Court's review of the record reveals that the ALJ did not err by failing to include off-task time and absenteeism in the RFC to account for Plaintiff's allegedly disabling migraine

[3]The ALJ appears to have recognized the cut-and-paste nature of these records over time. This Court undertook to compare Histories and Impressions side by side in order to parse out the provider's new findings. Read otherwise, one could be under the impression that Plaintiff "got an MRI this month that was normal" some four or five separate times.

headaches. The ALJ considered Plaintiff's complaints of debilitating migraine-related symptoms, but declined to credit them because they were not fully supported by the record and were inconsistent with her reports of improvement:

> The undersigned finds the claimant's allegations of disabling pain and limitations since September 6, 2022, are not fully supported by the medical evidence of record, or of the severity to preclude all work. While the claimant has residual limitations precluding her from a full range of activities and tasks, she remains capable of performing work within the identified residual functional capacity on a regular and sustained basis. Medical evidence fails to show that her impairments, singly or in combination, are of the frequency and/or severity to preclude all work given her positive response to medication. She has reported that her headaches and syncope episodes improved with treatment, and the undersigned finds no objective medical basis to preclude her from all work.
>
> * * *
>
> Based on the foregoing, the undersigned finds the evidence contained in the record does not support the claimant's allegations of incapacitating symptoms. The claimant has some limitations, but she is not so limited as to eliminate her from all forms of employment. The undersigned concludes that the claimant's subjective complaints and alleged limitations are not fully persuasive, and the claimant retains the capacity to perform work activities within the determined residual functional capacity.

ALJ's Decision, [DN 9] at 29-30; 33.

ALJ Hansen considered but ultimately rejected Plaintiff's allegations of disabling pain and limitations as not fully supported by the medical evidence of record, or of the severity to preclude all work. [DN 9] at 29. The ALJ considered Plaintiff's testimony of experiencing 4-6 migraine headaches per week, the worst of which require her to retreat into a completely dark and silent room with a migraine cap and medication, that she is very sensitive to light and noise, experiences nausea and speech problems, and must hide in her room until it goes away. He found that the alleged frequency and severity of Plaintiff's symptoms (which reportedly required her to lie down and be confined to her bed for days at a time) were inconsistent with homeschooling her special needs son and caring for her 3-year-old daughter outside of daycare hours, cooking for and playing

with her children, driving, using a computer to shop and pay bills, reading, watching television and movies, and playing games. [DN 9] at 30.

A Plaintiff bears the burden of proving a more restrictive RFC than found by the ALJ. *Dyson v. Comm'r of Soc. Sec.*, 786 F.App'x 586, 589 (6th Cir. 2019). Typically, a claimant may satisfy this burden by showing that either 1) a treating or other medical source opined limitations not contemplated by the ALJ's RFC and the ALJ erred in discounting the opinion; or 2) the ALJ improperly evaluated the limiting effects of her subjective symptoms. Plaintiff identifies no treating or other medical source who opined greater restriction than that found by the ALJ. On the contrary, the state agency program physicians opined <u>fewer</u> restrictions than the ALJ found. As noted at several points in the ALJ's Decision, there are no work-related limitations imposed by any of Plaintiff's treating sources. Plaintiff seeks to prevail by asserting that the ALJ improperly evaluated the limiting effects of her subjective symptoms. However, as discussed above, the ALJ properly considered Plaintiff's treatment records, function reports completed by Plaintiff, her husband and mother, Plaintiff's hearing testimony, her reported daily activities, and the opinion evidence. [DN 9] at 26-33.

## IV. <u>CONCLUSION AND ORDER</u>

This Court's review is limited to evaluating whether or not the ALJ's explanations for partially discrediting Plaintiff are reasonable and supported by substantial evidence in the record. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Because ALJ Hansen discussed the subjective and objective medical evidence at length, weighed Plaintiff's testimony against the record evidence, and considered her subjective complaints using the regulatory factors, the Court

finds that the ALJ's decision is supported by substantial evidence and complies with the applicable regulations. Accordingly,

IT IS ORDERED that the Commissioner's final Decision is hereby AFFIRMED, and the Plaintiff's Complaint is DISMISSED. A final judgment will be separately entered.

September 23, 2026

**Lanny King, Magistrate Judge**
**United States District Court**